## LAIRD v. ANDERSON–POST HARD-WOOD LUMBER CO., Inc.

### No. 2127.

Court of Appeal of Louisiana. First Circuit.

June 5, 1940.

Wood & Wood, of Leesville, for appellant.

Cline, Thompson, Lawes & Cavanaugh, of Lake Charles, for appellee.

DORE, Judge.

This is a compensation suit wherein plaintiff, individually and as natural tutrix, seeks to recover from the defendant compensation at the rate of $13.65 per week from June 2, 1939, for a period of 300 weeks, on account of the death of Clyde Laird, her husband and father of her children.

Plaintiff contends that Clyde Laird, her husband, was employed by the defendant company as a log hauler, and that in the course of his employment and incidental thereto, while endeavoring to lift his truck out of a bog-hole, he accidentally sustained an unusual strain and jerk; that at that time, and several years prior thereto, the said Clyde Laird, her husband, had been suffering with ulcers of the stomach, and that the said unusual strain and jerk aggravated and augmented his condition of ulcerated stomach, resulting in his death a few hours later.

Defendant denied that Clyde Laird received any accidental personal injuries while in its employ, contending that he was employed by J. F. Robinson, an independent contractor, and that he died from natural causes and not as a result of any accident or strain, if any he did receive; that there was no causal connection whatsoever between the alleged accident or strain and his death; and that, in the event Clyde Laird had received any injury, he received the same while delivering logs to Weber-King Mfg. Co., Inc., for J. F. Robinson, whom defendant called in warranty.

J. F. Robinson answered the call in warranty and joined the plaintiff in her attempt to recover judgment from defendant.

After a trial of the case, there was judgment in favor of defendant dismissing plaintiff's suit. She prosecutes this appeal.

It is not disputed that Clyde Laird had been suffering for several years prior to his death with ulcerated stomach, and that for a month or so prior to his death he had been following the occupation of log-truck driver, driving his own truck. J. F. Robinson, an independent logging contractor, who had purchased pine timber on a tract of land known as the Knight tract near Evans, west of Leesville, in the Parish of Vernon, and had sold this timber in logs to Weber-King Mfg. Co., Inc. to be delivered at Leesville, employed Laird and his truck to help him deliver these logs. The evening preceding the date of the alleged injury Laird reached the sawmill plant of Weber-King at Leesville with a load of pine logs, too late to have the logs scaled and accepted. On the next morning, that is June 1st, at daybreak he proceeded to have his truck unloaded and the logs scaled, at which time Robinson met him and informed him that he, Robinson, wanted him to haul logs from the Hughes tract near Sandy Creek to defendant company's sawmill at Kurthwood. After the unloading of the logs at the Weber-King plant, Robinson and Laird proceeded in Laird's truck to the business district of Leesville and parked the truck in front of a saloon where they remained for an hour or so. Robinson explains that this stay in Leesville was necessary in order to permit two of his employees to remove a caterpillar tractor from the Knight tract to the Hughes tract, this caterpillar tractor being

necessary for operation on the Hughes tract. Subsequent to their stay in Leesville, Laird, accompanied by Robinson, drove his truck to the vicinity where the logs were to be loaded on his truck to be transported to defendant's sawmill at Kurthwood.

Laird and Robinson reached a point on the highway near Sandy Creek about half a mile from the scene of operation where they met Robinson's employees, Savell and Dainwood, in the act of unloading the tractor. At about that time, a Mr. Tibbitt arrived. Laird stopped to allow Robinson to disembark from his truck. Robinson informed Tibbitt that Laird was not feeling well and was on his way to get medicine. Laird drove his truck to a neighboring house and requested a glass and spoon in order to take some medicine, informing the persons at the house that he was suffering from indigestion caused by having eaten plums that morning. In the meantime, Robinson and his crew removed the tractor and Robinson's truck to the scene of operation. After taking the medicine at the neighbor's house Laird proceeded to the scene of operation, where the logs were to be loaded, and upon arriving there he informed Robinson, Sevall and Dainwood that he would go to a neighboring store to obtain some salts. In the act of leaving, he bogged and Sevall took the tractor and shoved his truck out of the bog-hole, but in so doing the bumpers on the tractor and the truck became entangled. Laird thereupon obtained a small pole to use in prying the two bumpers apart, and Sevall got in the tractor for the purpose of jerking the bumpers apart and was successful in his efforts. Laird then got in his truck and drove off, in the direction of Robinson. Upon reaching Robinson, Laird got out of his truck and stated that his stomach was hurting, and that he was in need of salts and that in the event he could not obtain salts at the neighboring store he would go on into Kurthwood. He made no complaints to Robinson or Dainwood that he had received any jerk or strain or any accident in disentangling the bumpers, complaining only of his stomach hurting. None of the witnesses present saw plaintiff get hurt.

Laird was seen at the commissary of defendant company between twelve and one o'clock eating, and drinking a soda pop. The records of the commissary show that Laird purchased on that day cakes, soda pop, meat and epsom salts. Some time after one o'clock Laird visited the office of defendant's secretary-treasurer, Mr. Wood, and informed Mr. Wood that he had had an attack of indigestion or something and had had to visit a doctor, who gave him some medicine. The doctor confirmed Laird's statement with reference to visiting his office at about one o'clock, and stated that Laird complained of pains in his stomach; that Laird informed him that he had previously been treated by Dr. Reid of Leesville for ulcerated stomach; that he had hurt himself that morning while unloading logs at the Weber-King plant at Leesville, but, not of any serious consequence; that later on, feeling faintly he took a drink of whiskey which caused him immediately to have pains in his stomach, which pains remained with him all day; that from what Laird told him he diagnosed the case as acute indigestion and prescribed for him.

During Laird's visit in Mr. Wood's office, a report came in of trouble at the plant, and Mr. Wood, accompanied by Laird, thereupon visited the plant, and after giving the matter his attention Wood returned to his office, but Laird remained at the plant. At about 2:30 o'clock Laird visited a house near the plant where he requested a glass of hot water in order to take some medicine, complaining of indigestion caused by eating plums. He had at that time a package of epsom salts.

Between four and five o'clock, Laird was suffering intensely, and revisited the doctor's office, requesting that he be sent to Dr. Reid's hospital at Leesville and that his wife be informed. The doctor administered a hypodermic to Laird, and one of the defendant's employees proceeded to take Laird by auto to Leesville. On the way to Leesville, Laird informed the driver that he had gotten hurt at the Weber-King plant that morning, and that, feeling faintly, he had taken a drink of whiskey; that at noon he had eaten two fig newton cakes and had drunk a bottle of orange pop, and that later in the day he had taken some salts. Laird failed to mention anything about his getting hurt in the woods.

Laird was admitted to Drs. Reid and Shaw's hospital at about six o'clock P. M., at which time he was in a shocked condition, complained of intense pain in his abdomen, had a rapid pulse, and his whole abdomen was rigid, board-like. He never

did relax or warm up. The attending physician, Dr. Shaw, diagnosed the case as a rupture of a duodenal or gastric ulcer. His condition did not permit an operation. He died the next morning at about six o'clock; no autopsy was held.

The plaintiff testified that she was informed, upon her arrival at Leesville, that her husband had injured himself at the Weber-King plant that morning, and upon that information she first made demand upon Weber-King Mfg. Co., Inc., for compensation. It was only after a lapse of some time that she changed her position and claimed compensation from defendant.

From the evidence it is not established to the required degree of certainty that the deceased suffered any serious strain or jerk while in the course of employment by defendant or defendant's contractor. In any event, the preponderance of the medical testimony is to the effect that such strain or jerk as Laird may have received had no causal connection with his death. Such was the conclusion of the trial judge, and we see no manifest error therein.

For these reasons, the judgment appealed from is affirmed.